[No. 7983.]

## ESSELSTYN v. UNITED STATES GOLD CORPORATION.

1. JURY—*Right to Trial By.* An action by the owner of a lode mine to restrain the owner of another lode from extracting the ores of a vein claimed by the plaintiff to have its apex within the surface of his senior location, and demanding damages for trespasses already committed, is an equitable action. The parties are not entitled to a jury, and the verdict, if a jury should be called, would be merely advisory. (298.)

2. LODE MINING CLAIMS—*Intersecting.* Where two lodes intersect the owner of the senior patent is entitled to the ore found at the intersection (Rev. Stat. U. S. sec. 2336). (300.)

3. APPEAL AND ERROR—*Findings on Conflicting Evidence,* are not disturbed by the court of review. (300.)

*Error to Boulder District Court.* Hon. HARRY P. GAMBLE, Judge.

Mr. JOHN J. WHITE, for plaintiff in error.

Mr. JOHN R. WOLFF, Mr. HORACE N. HAWKINS, for defendant in error.

BAILEY, J., delivered the opinion of the court.

On August 24th, 1910, the plaintiff, plaintiff in error here, filed complaint in the District Court of Boulder County to enjoin alleged continuing trespasses, and incidentally to recover $15,000.00 damages, said to have been occasioned by past trespasses, upon the Alpine Horn lode mining claim,

by the defendant, defendant in error here, who claimed to own the Cross lode mining claim.

The complaint alleged that plaintiff was entitled to the exclusive possession of the Alpine Horn lode mining claim, through a bond and lease to him of the property, and further that at the point where the plaintiff's Alpine Horn claim intersects and crosses the defendant's Cross claim, which it does at nearly a right angle, the defendant had extended its workings beyond the vertical side lines of the Cross claim, and within the vertical side lines of the Alpine Horn claim, and was mining and removing ore therefrom, which plaintiff alleged belonged to the Alpine Horn claim, through veins apexing within the latter's territory. He alleged irreparable injury and damage, and prayed for permanent injunctive and other equitable relief, and for damages as above noted. For answer defendant alleged ownership of the Cross lode mining claim, admitted that it and its grantors had extended their workings within the vertical side lines of the Alpine Horn claim, but denied that they were extended upon any vein or veins belonging to that claim, and averred that the workings of the defendant and its grantors, in so far as they were extended beyond the vertical side lines of the Cross claim, and within the vertical side lines of the Alpine Horn claim, were so extended in following its Cross vein on its dip beyond the vertical side lines of the Cross lode mining claim; that the top or apex of the Cross vein is upon its so-called Cross claim, between its parallel and lines, and because of this situation its workings have been properly extended into and upon the Alpine Horn lode mining claim, upon the dip downward of the Cross vein, and that the ore and mineral disclosed thereby and therein are its property, and that it is lawfully entitled to work and mine the same.

The defendant further alleged, by way of a second defense, that it and its grantors since 1873 have at all times been, and now are, the owners of and entitled to the exclu-

sive possession of the Cross lode mining claim, together with all veins, lodes and ledges, the tops or apexes of which are between the vertical planes of its parallel end lines, and that it has a patent to its claim which is senior to the patented lode of plaintiff. Other special defenses are interposed which, in our view of the proper disposition of the case, need not be discussed or considered.

The replication of the plaintiff contained, in the main, general denials of the several allegations of defendant's answer as to all matters bearing upon its alleged apex rights, but did not put in issue, as we read and understand the pleadings, the ownership by the defendant of the Cross lode mining claim.

A jury, on application of plaintiff, was called to consider the case, which disagreed and was discharged. Later, also on application of plaintiff, additional testimony was taken before the court, and findings in favor of the defendant were made, a permanent injunction denied, and judgment of dismissal entered. Plaintiff brings the case here for review.

The plaintiff's theory of the case was that the defendant's "Cross" vein was a narrow seam, enclosed between confining walls, and that as such it did not extend, in its downward course, into the Alpine Horn claim at all, and that the defendant deliberately went outside of its own vein and territory, and extracted ore from the Contention vein, located upon and apexing in Alpine Horn territory, a vein wholly independent of, and separate and distinct from, the Cross vein, without any intersection with the latter vein, where it is claimed the trespass was committed.

The theory of defendant was and is that its Cross vein is one from which ore bodies to a width of forty feet and upwards had been extracted; that it apexed upon the Cross lode mining claim, and extended on its dip in its downward course into the Alpine Horn claim; that the ore in question

was extracted from this vein at a point where the vein from the Alpine Horn claim intersected it; that it, having the senior patent, had a right to all ores found at the junction or intersection of the Cross vein with the several Alpine Horn veins, claiming that all of its workings within the vertical side lines of the Alpine Horn claim were upon the Cross vein.

It is apparent that the real issue presented is whether the owner of the Cross lode mining claim had the apex of a vein, which in its downward course within the vertical planes of its end lines, extended into the Alpine Horn lode mining claim, within the vertical planes of the side lines thereof. The question for determination, therefore, was upon the evidence adduced *pro* and *con*, one of fact, the essential and fundamental issue being as above stated. Upon all of the testimony, and after a personal examination of the premises by the trial judge, the court found the issues joined in favor of the defendant and awarded judgment accordingly. The findings of the court were as follows:

"First. That the allegations of plaintiff's complaint are not sustained by the evidence and are not well founded.

Second. That the ore taken and broken by defendant from within the bounds of the plaintiff's Alpine Horn Lode Mining Claim was lawfully and legally broken and removed from the intersection of the plaintiff's so-called 'Contention' vein with the defendant's 'Cross' vein, the top or apex of which lies within the defendant's 'Cross' Lode Mining Claim, between its parallel end lines, and that the defendant had the right to it, and to remove said ore by virtue of defendant's apex rights in said vein owned by the defendant, and that the defendant's 'Cross' Lode Mining Claim is senior to the plaintiff's 'Alpine Horn' Lode Mining Claim, in point of time of location and patent.

Third. That the allegations of the defendant's answer are sustained by the evidence and that the workings done

under the order of this court by defendant within the bounds of plaintiff's Alpine Horn Lode Mining Claim, since the filing of this action, were made in and upon the defendant's 'Cross' vein, the top or apex of which lies within defendant's 'Cross' Lode Mining Claim.

Fourth. That the defendant was not, at the time this action was instituted, trespassing on plaintiff's property, and that there is no evidence that defendant intended to do so, and the court finds that the plaintiff is not entitled to an injunction in this cause."

It appears from the pleadings that the action is in equity, wherein plaintiff seeks to enjoin defendant from pursuing its Cross vein, under its alleged apex rights, in its downward course into the Alpine Horn claim. Plainly the primary object of the suit was for injunctive relief, and that fact determines its equitable character. The damage sought was a mere incident. The cause was properly triable to the court, and plaintiff had no lawful right either to demand or have a jury. If a jury had returned a verdict, it would have been advisory merely, and might have been either adopted or rejected by the court, in its discretion. *Danielson v. Gude,* 11 Colo. 87, 17 Pac. 283; *Coal Co. v. Coal Co.,* 24 Colo. 116, 48 Pac. 1045; *Cree v. Lewis,* 49 Colo. 186, 112 Pac. 326; *Selfridge v. Leonard-Heffner Co.,* 51 Colo. 314, 117 Pac. 158, Ann. Cas. 1913B, 282; *Neikirk v. Boulder National Bank,* 53 Colo. 350, 127 Pac. 137.

Under the issues it was a question of apex rights, and it is upon this question that the controversy turns, involving fact questions only. It became necessary for the court to find and declare which theory of the case was sustained, that of defendant or that of plaintiff. There was no question of law involved, except in so far as the determination of what constitutes a vein might be so considered, which was also a question of fact to be determined from the evidence. There was abundant testimony to warrant the court in finding

that the Cross vein was, as matter of law, a vein within the well defined legal meaning of that term. *Beals v. Cone,* 27 Colo. 473, 62 Pac. 948, 83 Am. St. Rep. 92; *Eureka Cons. M. Co. v. Richmond M. Co.,* 4 Sawyer, 302, Fed. Cas. No. 4,548; *Iron Silver Mining Co. v. Cheesman,* 116 U. S. 529, 6 Sup. Ct. 481, 29 L. Ed. 712; *Stevens v. Williams,* 1 McCrary, 480, Fed Cas. No. 13,413; *Bunker Hill & S. M. & C. Co. v. Empire State-Idaho M. & D. Co.,* (C. C.) 134 Fed. 268; *Hyman v. Wheeler,* (C. C.) 29 Fed. 347; Shamel on Mining, Mineral and Geological Law, pp. 154, 175, 176.

Much evidence was produced on the question as to whether the Cross vein contained values in appreciable quantities, the witnesses for the defendant asserting that it did, and the witnesses for the plaintiff that it did not. In concluding whether defendant's vein was one of great width, as it contended, the court had to take into consideration all of the essential characteristics which go to make up and constitute a vein, and in the end it was a question of fact whether the defendant had a broad vein or a narrow one, a mere mud seam, as plaintiff sought to show. This was one of the controlling issues.

The plaintiff contended that his so-called Perfect Right, Intermediate and Contention veins were separate and distinct, apexing on the Alpine Horn claim, could be so identified in the workings extended by the defendant in that territory, and that each of these veins were separated by country rock. The defendant did not question that the plaintiff had separate and distinct veins dipping toward the Cross vein, but asserted that the identity of each and every of these veins was lost when they passed through the hanging wall of defendant's Cross vein. Under the law the defendant was entitled to the ore found at the intersections of the two systems of veins, if there were in fact any such intersections, by virtue of the seniority of its patent over the patent of the plaintiff. Shamel's Mining, Mineral and Geological Law, pp. 229, 233, Rev. Stats. U. S., sec. 2336.

Whether there were any such intersections, and if so, where they occurred, were questions of fact and not of law. To aid the court in determining all of these questions, maps, exhibits and models were introduced, together with assays, ore shipments, ore returns, engineers' reports and the verbal testimony of a vast array of witnesses. The court heard both sides fully as to width, enclosing walls, character and dip of the veins, as to the assay values of the vein-matter and mineral, as to what was and what was not country rock, and upon many other points bearing upon every material issue involved in the case. Upon these matters, under conflicting and contradictory testimony, and after a personal inspection by the judge of the court of the premises involved, and after exhaustive arguments on the part of respective counsel, the court found the issues in favor of defendant, which, under long established and well settled and defined rules of this court, should not be disturbed upon review.

Upon a full and critical examination of the testimony we are prepared not only to say that the findings of the court, reached as they were upon conflicting and contradictory testimony, should not be disturbed, but are constrained to further declare that the great weight of the evidence, upon every disputed question of fact, preponderates strongly in favor of the defendant, and fairly establishes that the Cross vein is of great width; that it apexes in the Cross claim at the point where the latter is intersected by the Alpine Horn claim; that this vein, departing from its side lines, dips into the Alpine Horn territory, widening in its downward course as it extends into that claim; that at all points where the workings of the defendant are extended within and into the Alpine Horn ground, they are in and upon the Cross vein, and between the parallel end lines of that claim extended vertically downward; that the Cross vein is continuous from its apex to its lowest workings; and that the series of veins apexing on the Alpine Horn claim intersects the defendant's

Cross vein at the 80, 130 and 180-foot levels, and that by reason of the seniority of the defendant's Cross claim patent, the defendant was and is entitled to the ore found at these points.  From all of which it follows that the defendant was not, as matter of fact, a trespasser, as alleged, but was well within its legal rights when mining and extracting the ore about which complaint is made.

It seems clear, therefore, that the action of the court below, in denying the plaintiff a permanent injunction and dismissing his complaint, was fully justified under the law, as applied to its findings of fact, and that the same of right ought to be affirmed.

*Judgment affirmed.*

GABBERT, C. J., and WHITE, J., concur.

Decided April 5, A. D. 1915.  Rehearing denied June 7, A. D. 1915.